**Patrick McMILLAN, Plaintiff,**

v.

**DEPARTMENT OF the INTERIOR, Bruce Babbitt, Individually, Bruce Babbitt, in his capacity as Director of the Department of the Interior, Bureau of Land Management, Metropolitan Police Department, and Does 1 through 100, Defendants.**

**No. CV–S–95–143–PMP (RLH).**

United States District Court, D. Nevada.

Nov. 7, 1995.

Patrick McMillan, Las Vegas, NV, pro se.

Walter R. Cannon, Larry Ketzenberger, Rawlings, Olson & Cannon, Las Vegas, NV, for LVMPD.

Kathryn Landreth, U.S. Attorney, James S. Savett, Asst. U.S. Atty., Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Plaintiff Patrick McMillan ("McMillan") filed his Complaint for Damages and Injunctive Relief (# 1) on February 10, 1995. In that Complaint, he alleged eleven causes of action: (1) Harassment; (2) Color of Law; (3) Double Jeopardy; (4) Fraud; (5) Bad Faith; (6) Malicious prosecution; (7) Injunctive Relief; (8) Punitive damages; (9) Breach of Fiduciary Duty; (10) Negligence; and (11) Covenant of Good Faith and Fair Dealing. McMillan seeks compensatory damages of $2.8 million as well as punitive damages and injunctive relief.

Before the Court is the Defendants' Motion for Dismissal or in the Alternative an Order Granting Summary Judgment (# 28), filed July 21, 1995, on behalf of the Department of the Interior, Bruce Babbitt, Secretary of the Interior, in his official capacity, Bruce Babbitt in his individual capacity, and the Bureau of Land Management (collectively, "Federal Defendants"). Plaintiff Patrick McMillan ("McMillan") filed his Opposition to Defendant Department of the Interior's Motion to Dismiss and Request for Summary Judgement [sic] (# 32) on September 5, 1995. The Federal Defendants then filed a Reply (# 37) on September 20, 1995.

Defendant Las Vegas Metropolitan Police Department ("Metro") filed a Motion to Join Federal Defendants' Motion for Dismissal or in the Alternative for Summary Judgment (# 30) on August 23, 1995. McMillan filed his Opposition to Defendant Metropolitan Police Dept. Joining of Defendant Dept. of the Interior's Motion to Dismiss and Request for Summary Judgement [sic] (# 31) on September 5, 1995. Metro filed its Reply to Plaintiff's Opposition to Defendant Metro's Joining of Co–Defendants' Motion to Dismiss or Alternatively, for Summary Judgment (# 36)

on September 15, 1995. McMillan also filed a Motion to Strike Defendant Metro's Opposition to Plaintiff's Opposition to Defendant Metro's Joining of Co–Defendants' Motion to Dismiss or Alternatively, for Summary Judgement [sic] (# 38) on September 21, 1995. Metro filed its Opposition to Plaintiff's Motion to Strike Defendant Metro's Opposition to Plaintiff's Opposition to Defendant Metro's Joining the Co–Defendants' Motion to Dismiss or Alternatively, for Summary Judgment (# 43) on September 28, 1995. McMillan filed a Response to Defendant Metro's Opposition to Plaintiff's Motion to Strike Defendant Metro's Opposition to Plaintiff's Motion to Amend Complaint and Stay Proceedings (# 48) on October 7, 1995.

McMillan filed several Motions for Judgment on the Pleadings (## 31 and 32) with his various Oppositions. The Federal Defendants filed a Response to Motion for Judgment on the Pleadings (# 37) on September 20, 1995.

McMillan also filed a Motion to Amend Complaint for Actual Damages, Civil Rights Damages, Punitive Damages, and Injunctive Relief (# 34) on September 8, 1995. Defendant Metro filed an Opposition to Plaintiff's Motion to Amend Complaint and to Stay Proceedings (# 35) on September 15, 1995. McMillan filed a Motion to Strike Defendant Metro's Opposition to Plaintiff's Motion to Amend Complaint and Stay Proceedings (# 39) on September 21, 1995, which the Court construes as a reply and as a motion to strike. Metro filed its Opposition to Plaintiff's Motion to Strike Defendant Metro's Opposition to Plaintiff's Motion to Amend Complaint and Stay Proceedings (# 42) on September 28, 1995. McMillan filed a Response to Defendant Metro's Opposition to Plaintiff's Motion to Strike Defendant Metro's Opposition to Plaintiff's Motion to Amend Complaint and Stay Proceedings (# 48) on October 7, 1995.

The Federal Defendants also filed a Motion to Strike (# 37) on September 20, 1995. McMillan filed a Reply to Defendant Department of the Interior's Motion to Strike Plaintiff's Opposition to Federal Defendants Mo-

tion to Dismiss for Summary Judgement [sic] and Plaintiff's Motion for Judgment on the Pleadings (# 40) on September 27, 1995. The Federal Defendants filed no reply.

Finally, McMillan filed a video exhibit (# 33) which purports to depict the alleged underlying facts giving rise to his claims in this case.

## I. Claims against the United States

As a preliminary matter, this Court notes that the Supreme Court has "instructed the federal courts to liberally construe the 'inartful pleading' of *pro se* litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir.1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982) (per curiam)). McMillan appears in front of the Court *pro se.*

■ The Federal Defendants assert that the United States has not waived its sovereign immunity from this lawsuit. This is a question of the Court's subject matter jurisdiction. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941) ("[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). In considering whether the Court has subject matter jurisdiction, the Court may review affidavits and other evidence to resolve factual disputes on the issue of jurisdiction without converting the Federal Defendants' Motion to Dismiss into one for summary judgment. *McCarthy*, 850 F.2d at 560; *see Capitol Industries–EMI, Inc. v. Bennett*, 681 F.2d 1107, 1118 n. 29 (9th Cir.1982), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982); *Thornhill Publishing Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979).

■ Under the principle of sovereign immunity, the United States may only be sued where it has expressly consented to such suit by statute. *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983). If the United States has consented to a particular kind of suit, it may define the conditions under which it is willing to be sued. *Beller v. Middendorf*, 632 F.2d 788, 796 (9th Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) (quoting *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 274, 1 L.Ed.2d 306 (1957)); *see also Block*, 461 U.S. at 287, 103 S.Ct. at 1819. Finally, a suit against a federal agency which seeks relief against the sovereign is, in effect, a suit against the sovereign. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88, 69 S.Ct. 1457, 1460–61, 93 L.Ed. 1628 (1949). Accordingly, the principles of sovereign immunity apply to that agency. *Id.; see Beller*, 632 F.2d at 796–98.

### A. Statutory Basis for Sovereign Immunity

■ The party suing the United States must point to an unequivocal waiver of sovereign immunity. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984). In his Complaint (# 1), McMillan does not identify an unequivocal waiver of immunity. Instead, McMillan identifies several bases for the Court's jurisdiction. The Court will consider each statute in turn as to whether it waives the Government's sovereign immunity.

■ McMillan first asserts jurisdiction under 28 U.S.C. § 1331, which confers upon the federal district courts original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This section does not waive the sovereign immunity of the United States or its agencies. *Holloman*, 708 F.2d at 1401 (citing *Kester v. Campbell*, 652 F.2d 13, 15 (9th Cir.1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 298 (1982)); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir.1985).

However, to the extent that McMillan seeks nonmonetary relief, a provision of the Administrative Procedure Act ("APA"), codi-

fied at 5 U.S.C. § 702 [1] waives the sovereign immunity of actions alleging violations of due process against the United States and its agencies brought under 28 U.S.C. § 1331. *Beller*, 632 F.2d at 797; *see Gilbert*, 756 F.2d at 1459 n. 3. However, McMillan does not allege violations of due process.[2]

■ McMillan next asserts jurisdiction under 28 U.S.C. § 1332, which confers upon the federal district courts original jurisdiction where the matter in controversy exceeds $50,000, and where complete diversity of citizenship exists. This statute neither confers upon the Court jurisdiction of a dispute between McMillan and an agency or entity of the United States, *see Greenwich v. Mobil Oil Corp.*, 504 F.Supp. 1275, 1278 (D.N.J. 1981); *Jizmerjian v. Department of Air Force*, 457 F.Supp. 820, 822 (D.S.C.1978), *aff'd without op.*, 607 F.2d 1001 (4th Cir. 1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1036, 62 L.Ed.2d 766 (1980), nor does it state an unequivocal waiver of the sovereign immunity of the United States.

■ McMillan next asserts jurisdiction under 15 U.S.C. §§ 1–2, and 14–16. These statutes generally prohibit violations of the Sherman Anti–Trust Act. They do not permit suit against the United States, *see Saratoga Sav. & Loan Asso. v. Federal Home Loan Bank*, 724 F.Supp. 683, 687 n. 5 (N.D.Cal.1989) ("The United States, its agencies and officials, remain outside of the reach of the Sherman Act.") (quoting *Sea–Land Service, Inc. v. Alaska Railroad*, 659 F.2d

243, 246 (D.C.Cir.1981), *cert. denied*, 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982)), nor do they waive the sovereign immunity of the United States.

■ McMillan next asserts jurisdiction under 18 U.S.C. § 1961. This statute is the definitional statute of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). No RICO statute waives the sovereign immunity of the United States or its agencies. *See* 18 U.S.C. §§ 1961–1962, 1964; *see also Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir.1991) ("it is clear that there can be no RICO claim against the federal government.").

### B. Plaintiff's Claims

McMillan fails to identify a single statute waiving the sovereign immunity of the United States in his response. However, considering Plaintiff's *pro se* status, the Court will liberally construe the Complaint to see if any arguable basis for a waiver of sovereign immunity exists. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (allegations of a *pro se* litigant are held to less stringent standards than formal pleading); *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir.1984) (same).

Plaintiff alleges various tort claims in his Complaint. These claims include fraud, bad faith, malicious prosecution, breach of fiduciary duty, and negligence.

McMillan received two documents entitled "Decision / Notice of Noncompliance" (Certified mail # 2525867) and "Decision / Notice of Trespass" (Certified mail # 2525868) both dated December 2, 1994. McMillan filed a notice of appeal with regard to the Trespass decision but did not file a notice of appeal with regard to the Noncompliance decision. The Trespass appeal is still pending.

McMillan offers as an exhibit a decision from the Office of Hearings and Appeals of the Department of the Interior, which apparently is a decision regarding an appeal McMillan took from a third decision not provided by either party. The Court finds this exhibit irrelevant.

As McMillan is not aggrieved by "final agency action" within the meaning of the APA, the Court has no jurisdiction to hear any claims he may have under the APA. *See* 5 U.S.C. § 704.

---

1. 5 U.S.C. § 702 states in part:
 An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States....

2. Moreover, McMillan fails to satisfy jurisdictional prerequisites to the APA. A claimant must exhaust his administrative remedies before seeking judicial review under the APA. *See Clouser v. Espy*, 42 F.3d 1522, 1531 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995) ("an appeal to 'superior agency authority' is a prerequisite to judicial review") (quoting *Darby v. Cisneros*, —— U.S. ——, ——, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993)).

■ The Federal Tort Claims Act ("FTCA") waives the sovereign immunity of the United States for tortious acts for which a private person would be liable in similar circumstances. This waiver of sovereign immunity is strictly limited to its terms. *Sherwood*, 312 U.S. at 586, 61 S.Ct. at 769. Indeed, the procedural requirements for filing of claims under the FTCA are properly considered prerequisites for the waiver of sovereign immunity. *See Cadwalder v. United States*, 45 F.3d 297, 299 (9th Cir.1995) (FTCA administrative claim prerequisite is jurisdictional) (citing *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir.1992)).

Section 2675(a) of Title 28 prohibits the institution of an action of a claim under the FTCA prior to the final disposition of the claim by the appropriate federal agency.[3] 28 U.S.C. § 2675(a). McMillan never filed his claim with the Bureau of Land Management as required under the statute. Accordingly, the Court must dismiss all of McMillan's tort claims[4] for failing to satisfy the procedural requirements of the FTCA.

■ Plaintiff also alleges several claims arising from alleged violations of constitutional rights. However, the United States has not waived sovereign immunity with respect to such claims. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir.1991); *Clemente v. United States*, 766 F.2d 1358, 1363 (9th Cir.1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986). Finally, since lawsuits against government employees in their official capacities are considered lawsuits against the United States, the defense of sovereign immunity applies to Mr. Babbitt, in his official capacity as the Secretary of the Interior. *See Gilbert*, 756 F.2d at 1458. McMillan cannot assert claims regarding constitutional violations against the Federal Defendants in their official capacity. *Rivera*, 924 F.2d at 951.

However, a plaintiff alleging constitutional violations may assert a claim against the individual federal employee in his or her individual capacity as established by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). To proceed under a *Bivens*-type claim, it is axiomatic that a plaintiff must allege a violation of his or her constitutional rights.

The Federal Defendants assert that McMillan has not alleged a violation of his constitutional rights. The Court will analyze this assertion under the more appropriate standard governing motions to dismiss under Fed.R.Civ.P. 12(b)(6).

In considering a Motion to Dismiss under Rule 12(b)(6), the factual allegations of McMillan' Complaint must be presumed to be true, and this Court must draw all reasonable inferences in favor of McMillan. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether McMillan will ultimately prevail, but whether he is entitled to offer evidence in support of his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiffs' Complaint. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

---

**3.** 28 U.S.C. § 2675(a) states in part as follows:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

**4.** Even if the Court did not dismiss McMillan's claim of malicious prosecution for failing to satisfy the procedural requirements of the FTCA, dismissal of the malicious prosecution claim would still be proper. Section 2680(h) expressly exempts from waiver of sovereign immunity the tort of malicious prosecution. 28 U.S.C. § 2680(h).

■ McMillan does not identify a deprivation of a constitutional right. The allegations in his Complaint (#1) center primarily around alleged unlawful entries onto his "claims" and issuing citations. However, a trespass does not rise to the level of a constitutional violation.[5] Nor does the issuance of a citation. *See Bell v. Brennan,* 570 F.Supp. 1116, 1119 (E.D.Pa.1983). Accordingly, McMillan cannot state a *Bivens* claim.

The Court must dismiss a lawsuit against the United States or its agencies when no waiver of sovereign immunity exists to maintain the suit. *Gilbert,* 756 F.2d at 1458. McMillan fails to identify any statute which waives the sovereign immunity of the United States or its agencies or its officials. To the extent that the United States has waived its sovereign immunity for this lawsuit, McMillan still cannot maintain his claims. The Court has no power to hear these claims and must dismiss Plaintiff's Complaint (#1) against the Federal Defendants.

## II. Claims Against the Las Vegas Metropolitan Police Department

In his Complaint, McMillan states that Defendant Metro assisted the BLM in harassing McMillan. McMillan names Metro in his "Color of Law" claim, as well as other claims which appear to revolve around an alleged violation of McMillan's constitutional rights. Metro seeks dismissal of these claims pursuant to Fed.R.Civ.P. 12(b)(6). Accordingly, the Court will presume as true the factual allegations of McMillan's Complaint (#1), and will draw all reasonable inferences in favor of McMillan. *Usher,* 828 F.2d at 561.

In his Complaint, McMillan alleges that Metro violated his constitutional rights. These allegations arise from several incidents with Metro officers and BLM representatives. However, McMillan names Metro in its official capacity. This necessarily implicates municipal liability under 42 U.S.C. § 1983.

■ Municipal liability under § 1983 attaches when the municipality itself causes the constitutional violation at issue. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). A direct causal link between a municipal policy or custom and the alleged constitutional deprivation must exist to impose liability on the municipal entity. *Id.*

It is not enough to allege and prove that a constitutional violation represents a policy for which the local government entity is responsible. Respondeat superior does not impose liability upon a municipality. *City of Canton,* 489 U.S. at 385, 109 S.Ct. at 1203. Instead, the policy or custom must be a deliberate or conscious choice by a municipality's final policy-making official. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion); *Oviatt v. Pearce,* 954 F.2d 1470, 1477 (9th Cir.1992).

■ Moreover, the failure of a municipality to adopt a policy cannot serve as the basis for liability unless the municipality's inaction amounts to "deliberate indifference." *City of Canton,* 489 U.S. at 388, 109 S.Ct. at 1205. When a need for policy action is so obvious and the likelihood of the violation of constitutional rights so high, the policymakers of the local government entity are deliberately indifferent to the need. *Id.*

McMillan does not allege that any alleged violations of his constitutional rights were the result of a policy of Metro. McMillan does not allege a specific plan or scheme by Metro to support the allegations listed in his Complaint (#1). Accordingly, McMillan does not state a claim under 42 U.S.C. § 1983 against Metro and the Court must dismiss Metro as a defendant.

## III. Claims Against Doe Defendants

■ Generally, "Doe" pleading is improper in federal court. *See Bogan v. Keene Corp.,* 852 F.2d 1238, 1239 (9th Cir.1988). There is no provision in the Federal rules permitting the use of fictitious defendants. *Fifty Associates v. Prudential Ins. Co.,* 446 F.2d 1187, 1191 (9th Cir.1970). Accordingly,

---

5. Even if the actions alleged could be understood as allegations of a constitutional taking, McMillan cannot produce evidence rebutting that of the BLM that the United States actually owns the land in issue so as to defeat the Federal Defendants' alternative motion for summary judgment.

the Court will dismiss John Does I—100 from this action.

## IV. Motion to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The Supreme Court and the Court of Appeals for the Ninth Circuit interpret this command of Rule 15(a) very liberally, in order to permit meritorious actions to go forward, despite inadequacies in the pleadings. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Schlacter–Jones v. General Telephone of California,* 936 F.2d 435 (9th Cir. 1991); *United States v. Webb,* 655 F.2d 977 (9th Cir.1981).

However, leave to amend need not be granted if the proposed amended complaint would be subject to dismissal. *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (9th Cir.1980), cert. denied, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *see also Johnson v. American Airlines,* 834 F.2d 721 (9th Cir.1987) ("courts have discretion to deny leave to amend a complaint for 'futility', and futility includes the inevitability of a claim's defeat on summary judgment") (citations omitted).

The issue of futility in this case turns on whether Plaintiff's proposed amended complaint states a claim over which the Court has jurisdiction and whether it states a claim for which relief could be granted. With regard to the claims against the Federal Defendants, as discussed *supra,* the Court is without jurisdiction to entertain these claims. With regard to claims against additional federal employees in their official capacity, as discussed *supra,* McMillan has failed to allege a violation of constitutional rights.

With regard to the other claims and naming of additional parties, the Court finds these claims frivolous. The proposed Amended Complaint would be subject to dismissal. The Court will therefore deny the Motion to Amend.